UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOINETTE JONES,

                                    NO. CIV.S-06-1505 LKK/KJM

          Plaintiff,

     v.

                                         O R D E R

BALTIMORE LIFE INSURANCE
COMPANY aka BALTIMORE LINE,
and DOES 1-10,

          Defendants.

_____/

     Plaintiff, Antoinette Jones, brings suit against defendant, Baltimore Life Insurance Company, for breach of contract and the implied covenant of good faith and fair dealing.  The dispute revolves around Effie Allen's life insurance policy, issued by defendant under which plaintiff is the named beneficiary. Pending before the court is defendant's motion for summary judgment.  For the reasons discussed herein, the motion is denied in part and granted in part.

////

////

1

# I.

## FACTS[1]

**A.   Effie Allen's Life Insurances Policy**

On or about November 7, 2001, Ms. Allen applied for a life insurance policy with Baltimore Life in the amount of $15,000. Def.'s SUF ¶ 1.  Defendant issued Policy No. A1014655 as applied for on December 5, 2001.  Def.'s SUF ¶ 2.  Plaintiff was the named policy owner.  <u>See</u> Ex. B, Schulster Decl. in support of Def.'s Mot. for Summ.  J.  ("Schulster Decl.").

Several provisions of the insurance contract are relevant for the resolution of the pending motion.  First, the policy states that the date of issuance was December 5, 2001.  <u>See</u> Ex. B, Schuster Decl.  The contract provides:

This Policy Is A Contract

This Policy is a contract.  In entering into this contract, we relied on the accuracy of the statements made in the application.  In the absence of fraud, these statements are considered representations and not warranties.  We can contest this policy and use statements made in the application in defense of a claim if the application has a material misstatement and a copy of it was attached to this policy when it was issued.

Def.'s SUF ¶ 3.  Second, the contract also provides for a contestability period:

Contesting This Policy

We will not contest this policy after it has been in effect while the Insured is living for two years from the policy date.

---

[1] Undisputed unless otherwise noted.

Def.'s SUF ¶ 3.  Third, the contract also sets forth the procedure for reinstating the policy.  If any premium is not paid when due, "the policy will continue in effect for 31 days.  This is called the grace period."  Ex. B, Schuster Decl.  However,

> If any premium remains unpaid after the grace period, you may request reinstatement of this policy.  You must do this within five years from the date due of the first unpaid premium.
>
> You'll have to provide evidence satisfactory to us that the Insured's insurability has not changed since the policy was issued.  You'll also have to pay all unpaid premiums plus interest at the annual rate of 6%.  Any policy debt will be reinstated if not repaid.

Ex. B, Schuster Decl.

It is undisputed that in the fall of 2002, Ms. Allen missed making "some" payments.  See Antoinette Jones Declaration in Support of Opp'n to Mot. for Summ. J. ¶ 5 ("Jones Decl.").  According to defendant, the policy officially "lapsed" for nonpayment on November 4, 2002.  Def.'s SUF 4.  Plaintiff disputes the use of the word "lapse" as the word is not contained in the policy itself.  See Pl.'s Response to Def's SUF ¶ 4.

**B.   Ms. Allen's Application for Reinstatement**

On April 20, 2003, Ms. Allen applied for reinstatement of the policy by completing an application for reinstatement.  Def.'s SUF ¶ 5. The application included the following two questions:

> In the past two (2) years, have you or any person(s) insured under this policy had any illness involving the heart or respiratory systems or a diagnosis of cancer?
>
> Within the past two (2) years, have you or any person(s) insured under this policy had any disease not mentioned above?

3

1  Def.'s SUF ¶ 6.

2      It is undisputed that Ms. Allen answered "no" to both

3  questions.  Above the signature line, the application stated:

4          It is further agreed that if the policy is reinstated, such
           reinstatement will be conditioned upon the correctness of the
5          answers to the above questions.

6

7  Def.'s SUF ¶ 6.  Defendant accepted the application and on May 5,

   2003, the policy was reinstated.
8
       Almost one year later, on April 18, 2004, Ms.  Allen died.
9
   Her death certificate listed the causes of death as sepsis,
10
   pneumonia, and chronic obstructive lung disease.  See Certificate
11
   of Death, Ex. D, Schuster Decl.  Ms. Allen was 76.  Id.
12
   C.   The Events Surrounding Plaintiff's Claim Pursuant to the
13
        Policy
14
       On April 23, 2004, defendant received an Insurance Assignment
15
   from the Frisbie-Warren & Carrol Mortuary, Inc. in the amount of
16
   $4,243.78 to be deducted from the proceeds of the Policy.  Def.'s
17
   SUF ¶ 12.  Upon receipt of the Insurance Assignment request,
18
   defendant sent a letter to the plaintiff, dated May 3, 2004.  The
19
   letter stated, in part:
20
           This policy was issued December 5, 2001 and contains a two-
21         year constestability clause.  Because the policy lapsed and
           was reinstated effective May 5, 2003, the two year
22         contestability period again becomes effective.  Based on the
           date of the reinstatement and the date of death of the
23         insured, this claim has fallen within that period.

24  Ex.  F, Schuster Decl.  The letter went on to explain that an

25  investigation would be performed and requested that plaintiff

26  submit a "Claimant's Statement, including the names and addresses

                                    4

1 of Ms. Allen's physician and any hospitals and doctors visited

2 within the last 5 years." Id.

3     Plaintiff submitted the requested information and defendant

4 commenced an investigation. On July 6, 2004 defendant received

5 medical records from Dameron Hospital in Stockton, California. The

6 records pertained to two separate visits that Ms. Allen made to the

7 hospital.

8     The first visit occurred on September 11, 2002 and the records

9 reflect that Ms. Allen's chief complaint was "weakness." Under

10 a section marked "history of present illness" the records state

11 that Ms. Allen had a history of diabetes, renal insufficiency,

12 hypertension, and peripheral vascular disease. See Ex. I, Schuster

13 Decl. Ms. Allen was discharged eight days later. Her "principal

14 diagnoses" was listed as "dehydration with hypernatremia." Id.

15     Ms. Allen's second visit to the hospital occurred on January

16 7, 2003. This time Ms. Allen's chief complaint is listed as "right

17 hip pain." Ex. J, Schuster Decl. Under the section marked "past

18 medical history" the record states: "significant for hypertension,

19 she also has a recent history of CVA [cardiovascular accident] a

20 couple of months ago with some degree of dementia and used a

21 feeding tube because of her stroke." Id. The "principal

22 diagnosis" was listed as "hip fracture." Id. Ms. Allen remained

23 in the hospital until January 13, 2003. Id.

24 **D.**   **Defendant's Denial of Plaintiff's Claim**

25     After reviewing Ms. Allen's hospital records, defendant

26 determined that Ms. Allen has made material misrepresentations on

her application for reinstatement.  This decision was based on the opinion of defendant's medical director, Dr. Sal Fiscina, who reviewed Ms. Allen's medical records and concluded that a stroke is considered a disease that should have been reported on the application for reinstatement.  Def.'s SUF ¶ 26.[2]

Defendant's Claims Department also sought the opinion of the Underwriting Department, which reviewed the medical records and concluded that based on Baltimore Life's underwriting standards, Ms. Allen's undisclosed medical history was material and that if it had been disclosed on the Application for Reinstatement, the policy would not have been reinstated. Def.'s SUF ¶ 27.  Plaintiff objects to this "fact" on the grounds that defendant fails to disclose what constitutes the "underwriting standards."

In a letter dated August 16, 2004, defendant informed plaintiff of its decision to rescind the policy based on these material misrepresentations.  Def.'s ¶ SUF 29.  The letter explained that the policy would not have been reinstated if Ms. Allen had accurately answered the medical questions on the application for reinstatement.  Enclosed with the letter was a check in the amount of $2,171.80.  With respect to the check, the letter stated:

---

[2] Plaintiff objects to Dr. Fiscina's conclusions on hearsay grounds.  Plaintiff's objection is well taken.  As discussed in the analysis section of this order, there is no declaration from Dr. Fiscina himself.  Rather, Dr. Fiscina's conclusions are found as part of Ms. Schuster's declaration.  Ms. Schuster merely states that Dr. Fiscina was consulted and that Dr. Fiscina "confirmed that a stroke is considered a disease."   Schuster Decl. ¶ 17. Accordingly, Dr. Fiscina's testimony is inadmissable hearsay.

> The obligation of the Baltimore Life Insurance Company is limited to the refund of all premiums since the date of reinstatement. A check in the amount of $2,171.80 representing the premiums paid into this policy since reinstatement is enclosed.
>
> The depositing or cashing of this check will release The Baltimore Life Insurance Company from paying this claim.
>
> If you disagree with this determination you may submit additional information as well as your comments and views of ths issue in writing to the Baltimore Life Insurance Company. We will then examine pertinent documents and your issues. Or you may contact the: California Department of Insurance.

Ex. K, Schuster Decl.

On August 24, 2004, plaintiff endorsed and cashed the check. Def. ¶ SUF 33.

**E.   Events following Defendant's Denial of Plaintiff's Claim**

In addition to cashing the check, plaintiff followed up with defendant.  On September 16, 2004, plaintiff emailed defendant requesting copies of Ms. Allen's original application and application for reinstatement.  Defendant forwarded the requested documents to plaintiff.  Def.'s SUF ¶¶ 34-35.

On or about October 18, 2004, plaintiff submitted a service questionnaire asserting that Ms. Allen did not suffer from chronic obstructive pulmonary disease ("COPD") for years as indicated on her death certificate, but was only diagnosed on October 15, 2003.

On November 11, 2004, defendant sent plaintiff a service questionnaire in response to additional concerns that Plaintiff expressed about the policy.  This was followed by letters dated December 3, 2004, and December 23, 2004, requesting that plaintiff submit the service questionnaire.  Def.'s SUF 40.

On December 23, 2004, plaintiff returned the service

1 questionnaire.   In her second service questionnaire, plaintiff
2 focused on Ms. Allen's responses to the medical questions on the
3 application for reinstatement.  Plaintiff maintained that Ms. Allen
4 did not require oxygen until her final hospital visit.  She also
5 disputed that Ms. Allen suffered from COPD for years as indicated
6 on her death certificate.   In support of her appeal, plaintiff
7 submitted a letter from Ms. Allen's physician, Dr. Elma Cara, dated
8 November 29, 2004.  In her letter, Dr. Cara noted that Ms. Allen
9 had a history of diabetes mellitus II, renal insufficiency, CVA,
10 aspiration pneumonia, hypertension and hyponatremia.   The letter
11 also stated that Ms. Allen was diagnosed with COPD on October 15,
12 2004.  See Ex. S, Schuster Decl.

13     Based on the additional information provided by plaintiff,
14 defendant reevaluated its decision to rescind the policy.   The
15 Claims Department again consulted with Dr. Fiscina, to ascertain
16 whether: 1) renal insufficiency was a disease and 2) whether renal
17 insufficiency constituted renal failure.  Dr. Fiscina opined that
18 renal insufficiency was a disease and that renal insufficiency did
19 not constitute renal failure.  Def.'s SUF ¶ 45.  Dr. Fiscina also
20 again confirmed that a stroke is a disease of the blood vessels in
21 the brain.  Def.'s SUF ¶ 46.  The statements of Dr. Fiscina, for
22 the reasons previously noted, are hearsay.  Accordingly, these
23 statements will not be admissible for the truth of the matter
24 asserted.

25     In a letter dated February 22, 2005, defendant informed
26 plaintiff that it was upholding its original decision to rescind

the policy.  The letter stated, "if we had known the full extent of Ms. Allen's medical history, we would not have approved the reinstatement of her policy."  Ex. V, Schuster Decl.

During the discovery phase of this lawsuit, defendant discovered additional medical records that revealed that Ms. Allen visited the hospital on October 29, 2002 as well.  At that time, she was diagnosed with hyponatremia.  See Ex. C, Mendoza Decl.  She remained in the hospital until November 1, 2002.  Her secondary diagnoses included, among other things, renal insufficiency and cerebrovascular accident.

**F.   Plaintiff's Complaint**

Plaintiff brought suit in state court for breach of contract and the duty of good faith and fair dealing.  Plaintiff alleges that she and Ms. Allen performed according to the terms of the policy agreement and that defendant breached the agreement when it failed to pay plaintiff "the sums that are required pursuant to the terms of the contract."  Compl. ¶ 12.

Defendant removed the case to this court based on diversity jurisdiction.  Plaintiff does not dispute or challenge the removal.[3]

**II.**

**Standard for Motions For Summary Judgment**

Summary judgment is appropriate when it is demonstrated that

---

[3]  Although the state court complaint did not include a claim for damages in excess of $75,000.00, plaintiff's counsel represented to defendant that plaintiff was seeking in excess of $75,000.00 in damages.

there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

1  at 323.

2     If the moving party meets its initial responsibility, the

3  burden then shifts to the opposing party to establish that a

4  genuine issue as to any material fact actually does exist.

5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6  586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

7  391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

8     In attempting to establish the existence of this factual

9  dispute, the opposing party may not rely upon the denials of its

10  pleadings, but is required to tender evidence of specific facts in

11  the form of affidavits, and/or admissible discovery material, in

12  support of its contention that the dispute exists.  Fed. R. Civ.

13  P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

14  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

15  1998).  The opposing party must demonstrate that the fact in

16  contention is material, i.e., a fact that might affect the outcome

17  of the suit under the governing law, Anderson v. Liberty Lobby,

18  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

19  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

20  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

21  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

22  i.e., the evidence is such that a reasonable jury could return a

23  verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

24  also Cline v. Industrial Maintenance Engineering & Contracting Co.,

25  200 F.3d 1223, 1228 (9th Cir. 1999).

26     In the endeavor to establish the existence of a factual

11

1  dispute, the opposing party need not establish a material issue of
2  fact conclusively in its favor.  It is sufficient that "the claimed
3  factual dispute be shown to require a jury or judge to resolve the
4  parties' differing versions of the truth at trial."  First Nat'l
5  Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.
6  Thus, the "purpose of summary judgment is to 'pierce the pleadings
7  and to assess the proof in order to see whether there is a genuine
8  need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
9  Civ. P. 56(e) advisory committee's note on 1963 amendments); see
10 also International Union of Bricklayers & Allied Craftsman Local
11 Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.
12 1985).

13      In resolving the summary judgment motion, the court examines
14 the pleadings, depositions, answers to interrogatories, and
15 admissions on file, together with the affidavits, if any.  Rule
16 56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093
17 (9th Cir. 1999).  The evidence of the opposing party is to be
18 believed, see Anderson, 477 U.S. at 255, and all reasonable
19 inferences that may be drawn from the facts placed before the court
20 must be drawn in favor of the opposing party, see Matsushita, 475
21 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
22 655 (1962) (per curiam)).  Nevertheless, inferences are not drawn
23 out of the air, and it is the opposing party's obligation to
24 produce a factual predicate from which the inference may be drawn.
25 See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45
26 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

1    Finally, to demonstrate a genuine issue, the opposing party

2  "must do more than simply show that there is some metaphysical

3  doubt as to the material facts. . . . Where the record taken as a

4  whole could not lead a rational trier of fact to find for the

5  nonmoving party, there is no 'genuine issue for trial.'"

6  Matsushita, 475 U.S. at 587 (citation omitted).

                                  **III.**

                                **Analysis**

9    Defendant's motion is granted in part and denied in part.  The

10  court denies defendant's motion with respect to plaintiff's breach

11  of contract claim and breach of the implied covenant of good faith

12  and fair dealing.  The court grants defendant's motion with respect

13  to plaintiff's claim for punitive damages.

14  **A.   Plaintiff's Claims for Breach of Contract and Implied**
    **Covenant of Good Faith and Fair Dealing**

15
    For the reasons explained herein, defendant fails to meet its
16
    initial burden of showing that there is sufficient evidence to
17
    support a finding of material misrepresentation and accord and
18
    satisfaction.
19
    **1.   Material Misrepresentation**
20
    The gravemen of defendant's argument is that Ms. Allen made
21
    a material misrepresentation on her application for reinstatement.
22
    When defendant discovered the misrepresentation, it was entitled
23
    to rescind the contract, rendering the policy void <u>ab</u> <u>initio</u>.[4]
24

25      [4] Plaintiff contends that the contract provided for a two year
    contestability period and that two year period expired on December
26  5, 2003, several months before defendant began its investigation.

                                   13

1 Defendant argues that Ms. Allen materially misrepresented her

2 medical conditions when she answered "no" to the questions on the

3 application for reinstatement.

4     The fundamental flaw in defendant's position is that the

5 evidence relied upon by defendant does not support a finding that,

6 as a matter of law, Ms. Allen made a misrepresentation on her

7 application for reinstatement. As defendant concedes in its brief,

8 recession is an affirmative defense. Therefore, at the summary

9 judgment stage, defendant must make a showing sufficient for the

10 court to hold that no reasonable trier of fact could find other

11 than for the moving party. Calderone v. United States, 799 F.2d

12 254, 259 (6th Cir.1986) (quoting W. Schwarzer, Summary Judgment

13  

_____

14  The contract states "we [defendant] will not contest this policy
after it has been in effect while the Insured is living for two
15 years from the policy date.  However we can end the policy whenever
a premium is not paid within the grace period . . ." See Def.'s SUF
16 ¶ 3.  The problem with plaintiff's position is that defendant's
actions were in keeping with the provisions of section 10113.5 of
17 the California Insurance Code, which states:

18     An individual life insurance policy, upon reinstatement, may
    be contested on account of fraud or misrepresentation of
19     facts material to the reinstatement only for the same period
    following reinstatement, and with the same conditions and
20     exceptions, as the policy provides with respect to
    contestability after original issuance.

21  

22 Cal. Ins. Code § 10113.5. As the code suggests, defendant had two
years from the date of reinstatement to contest the policy.  See
23 also North American Co. for Life and Health Ins. v. Rypins,  29
F. Supp. 2d 619, 623 (N.D. Cal. 1998)(finding that "under the terms
24 of the policy and § 10113.5, the [insurance] Company had two years
from the date of the reinstatement to discover any fraud or
25 misrepresentation.")  Accordingly, plaintiff's argument regarding
the period of contestability is unavailing.

26  

1  Under the Federal Rules: Defining Genuine Issues of Material Fact,

2  99 F.R.D. 465, 487-88 (1984)).  This means that the defendant must

3  "establish beyond peradventure all of the essential elements of the

4  . . . defense to warrant judgment in his favor."  Fontenot v.

5  Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986).

6       Once defendant meets its initial burden of presenting evidence

7  which, if uncontradicted, would entitle it to a directed verdict

8  at trial, the burden shifts to the non-moving party to present

9  specific  facts  showing  that  such  contradiction  is  possible.

10 British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir.

11 1978).  As the Ninth Circuit explains:

12         A summary judgment is neither a method of avoiding the
           necessity for proving one's case nor a clever procedural
13         gambit whereby a claimant can shift to an adversary the
           burden of proof on one or more issues.
14
15 United States v. Dibble, 429 F.2d 598, 601 (9th Cir. 1970).

16      For the reasons discussed herein, defendant fails to meet its

17 initial burden of establishing that the evidence sufficiently

18 demonstrates that it is entitled to judgment as a matter of law.

19 Because defendant does not meet its initial burden, it is not

20 incumbent on plaintiff to set forth evidence suggesting that there

21 are disputed facts.

22      **a.   Applicable Law Regarding Material Misrepresentations**

23      Under California law, material misrepresentations on an

24 insurance application are grounds for the insurance company to

25 rescind the policy.  Imperial Casualty & Indemnity Co. v.

26 Sogomonian, 198 Cal. App. 3d 169, 179 (1988), quoting Thompson v.

1   <u>Occidental Life Ins. Co.</u>, 9 Cal. 3d 904, 916 (1973).  "False

2   representation or a concealment of fact whether intentional or

3   unintentional, which is material to the risk, vitiates the policy."

4   <u>Telford v. New York Life Ins. Co.</u>, 9 Cal.2d 103, 105 (1937).  "The

5   presence of an intent to deceive is not essential." <u>Id.</u>

6        At the summary judgment stage, a motion for a finding of

7   rescission may be "properly granted for the insurer where the only

8   reasonable inference to be drawn from the undisputed evidence

9   presented is that the false negative answers and omissions of [the

10  applicant] were material to [the insurer's] decision to provide

11  insurance coverage."  <u>West Coast Life Ins. Co. v. Ward</u>,  132 Cal.

12  App. 4th 181, 187-8 (2005) (internal citations omitted).

13       In short, the court must determine whether Ms. Allen made a

14  misrepresentation and whether that misrepresentation was material.

15       **b.   Whether Ms. Allen Made a Misrepresentation**

16       Defendant fails to establish the first factor, namely, that

17  Ms. Allen made a misrepresentation on her application for

18  reinstatement.

19       As previously noted, the application for reinstatement

20  included the following two questions:

21       In the past two (2) years, have you or any person(s) insured
         under this policy had any illness involving the heart or
22       respiratory systems or a diagnosis of cancer?

23       Within the past two (2) years, have you or any person(s)
         insured under this policy had any disease not mentioned
24       above?

25
    Def.'s SUF ¶ 6.  It is undisputed that Ms. Allen answered "no" to
26

1  both questions.

2      Defendant argues that answering "no" was false in light of Ms.

3  Allen's medical records.  Defendant maintains that Ms. Allen's

4  medical records from the two years preceding her application for

5  reinstatement demonstrate that Ms. Allen had a renal insufficiency

6  and a history of cerebrovascular accidents (CVAs), dementia, and

7  had to use a feeding tube because of a stroke.  Defendant contends

8  that renal insufficiency and strokes are considered diseases and

9  thus, were reportable.

10      In reviewing the medical records and in drawing all reasonable

11  inferences in favor of plaintiff, it is apparent that defendant

12  mischaracterizes the records.  The medical records do not

13  demonstrate that Ms. Allen misrepresented her medical condition.

14      It is undisputed that Ms. Allen visited Dameron Hospital on

15  three separate occasions during the two years prior to her

16  application for reinstatement.  On her first visit, Ms. Allen

17  complained of "weakness" and her principal diagnosis was

18  "dehydration with hypernatermia." See Ex. I, Schuster Decl.  Ms.

19  Allen's discharge summary also listed six "secondary diagnoses,"

20  including probable multi-infarct dementia, and "probable recent CVA

21  with CT scan of the head evidence of bilateral lacunar infarcts at

22  the internal capsule/basal ganglion region and left parietal

23  region." Id.  Under a section marked "history of present illness"

24  the record states that Ms. Allen has a history of "renal

25  insufficiency."

26      On her second visit, Ms. Allen was diagnosed with

hyponatremia.  Seven secondary diagnoses were also listed, these included, inter alia, dehydration, renal insufficiency and a history of hypertension.  <u>See</u> Ex. C, Mendoza Decl.  The record is silent as to Ms. Allen's chief complaint upon being admitted.

On her third visit, the records reflect that Ms. Allen's chief complaint was right hip pain.  She was diagnosed with a hip fracture.  Her secondary diagnoses were listed as: "chronic renal insufficiency, old cerebrovascular accident, diabetes type II, hypertension."  <u>See</u> Ex. J, Schuster Decl.

In sum, the records clearly reflect that Ms. Allen was diagnosed with hypernatremia, hyponatremia and a fractured hip. Had the application for reinstatement asked about these conditions, or asked if Ms. Allen had been hospitalized in the previous two years, clearly answering "no" would have been a misrepresentation. However, the questions were far more specific and asked specifically about diseases.

Although the records do suggest that at some point in time Ms. Allen may have suffered a stroke, and may have a history of renal insufficiency, mere mention of these ailments does not constitute grounds for recession.  In other words, the records do not conclusively establish these were diseases for which Ms. Allen was diagnosed two years prior to her application for reinstatement. Rather, these ailments where simply noted in her record.  A mere mention of certain ailments, without more, is insufficient evidence that Ms. Allen had diseases that she should have disclosed.

For example, the records reflect that Ms. Allen may have a

history of renal insufficiency.  That she had a history of this
ailment does not therefore mean that she was diagnosed with a
disease during the two years prior to her application for
reinstatement.  Indeed, it is possible that Ms. Allen was in fact
diagnosed with renal insufficiency before she even applied for life
insurance and that she reported as much on her initial
application.[5]  Based on the medical records before the court, there
is simply no way for the court to know when – or if – Ms. Allen was
ever actually diagnosed with renal insufficiency.  In short,
defendant makes an unsupported inferential leap when it concludes
that because Ms. Allen's medical record mentions the words "renal
insufficiency," and "CVA" Ms. Allen made a misrepresentation on her
application for reinstatement.

     Moreover, other than Dr. Fiscina's testimony, defendant fails
to explain how or why renal insufficiency and strokes are
considered diseases and thus, were reportable.  There are no
declarations from experts, for example, explaining what renal
insufficiency is and whether or not it constitutes a disease.
Similarly, there is no expert testimony that Ms. Allen did in fact
suffer a stroke and that a stroke constitutes the type of disease
that Ms. Allen should have reported.

     Even assuming for the moment that Ms. Allen should have
reported that at some point in time she had a stroke, it is clear
that Ms. Allen had "no present knowledge of the facts sought, or

---

[5]  Defendant failed to provide the court with a copy of Ms.
Allen's initial application.

1  failed to appreciate the significance of information related to

2  him" therefore making recision of the contract inappropriate.

3  Thompson v. Occidental Life Ins. Co., 9 Cal. 3d 904, 916 (1973).

4  "(T)he failure to mention in an application for insurance the

5  existence of a condition of which the applicant has no knowledge

6  or appreciation is not misrepresentation affecting the validity of

7  the policy." MacDonald v. California-Western States Life Ins. Co.,

8  203 Cal. App. 2d 440, 448 (1962).

9      Defendant's position is anchored by the opinion testimony of

10 Dr. Fiscina.  According to Ms. Antoinette Schuster, Vice President

11 of Insurance Services at Baltimore Life, Dr. Fiscina reviewed Ms.

12 Allen's medical records and determined that a stroke is considered

13 a disease and thus, should have been disclosed by Ms. Allen on her

14 application for reinstatement.  See Schuster Decl. ¶¶ 17, 31.  Dr.

15 Fiscina also determined that renal insufficiency constitutes a

16 disease that should have been reported. Id. ¶ 30.

17     It is clear from Ms. Schuster's declaration that she was not

18 personally involved in reviewing Ms. Allen's records and instead

19 relied on statements made by Dr. Fiscina.  Rather than set forth

20 facts which would be admissible at trial, the declaration of Ms.

21 Schuster contains inadmissable hearsay, namely, the statements of

22 Dr. Fiscina.  Accordingly, the statements of Dr. Fiscina must be

23 disregarded.  See Block v. City of Los Angeles, 253 F.3d 410, 419

24 (9th Cir. 2001).

25     In its reply brief, defendant sought to "avoid any hearsay

26 objections" Def.'s Reply Br. At 15, and included a new declaration

20

1   of Dr. Fiscina himself.   Attached to the declaration is Dr.

2   Fiscina's curriculum vitae.   The court must disregard this new

3   declaration.   It is improper for a moving party to introduce new

4   facts or different legal arguments in the reply brief than those

5   presented in the moving papers.   See Lujan v. National Wildlife

6   Federation, 497 U.S. 871, 894-95(1990).   See also Black v. TIC Inv.

7   Corp., 900 F.2d 112, 116 (7th Cir. 1990) (where new evidence is

8   presented in a reply to a motion for summary judgment, the district

9   court should not consider the new evidence without giving other

10  party time to respond).

11      For these reasons, defendant has failed to offer sufficient

12  proof to establish that its decision to rescind the policy was

13  supported by the evidence.   The records do not support a finding

14  that Ms. Allen made a misrepresentation on her application for

15  reinstatement.   In short, the court cannot conclude that the "only

16  reasonable inference to be drawn from the undisputed evidence

17  presented is that the false negative answers and omissions of [the

18  applicant] were material to [the insurer's] decision to provide

19  insurance coverage."   West Coast Life Ins. Co., 132 Cal. App.4th

20  at 187-8.

21      Defendant is similarly not entitled to judgment on plaintiff's

22  claim for breach of the implied covenant of good faith and fair

23  dealing.   Defendant argues that the evidence establishes that

24  defendant's decision to rescind the policy was reasonable based on

25  Ms. Allen's misrepresentations. Therefore, defendant argues, there

26  was no contract and there can be no claim for a breach of covenant

of good faith and fair dealing.  As previously explained, defendant

has failed to establish that Ms. Allen actually made a

misrepresentation.

**2.   Accord and Satisfaction**

Defendant also argues that there is a separate ground to grant

summary judgment, namely, that there was accord and satisfaction

of plaintiff's claim.

**a.   The Law of Accord and Satisfaction**

Defendant asserts that under the California Uniform Commercial

Code § 3311, it is not liable to plaintiff because an accord and

satisfaction of her claim was reached upon her cashing of the

check.  Section 3311 provides, in pertinent part:

> (a) If a person against whom a claim is asserted proves
> that
>
> (1) that person in good faith tendered an instrument to
> the claimant as full satisfaction of the claim, (2) the
> amount of the claim was unliquidated or subject to a
> bona fide dispute, and (3) the claimant obtained payment
> of the instrument, the following subdivisions apply.
>
> (b) Unless subdivision (c) applies,[6] the claim is
> discharged if the person against whom the claim is
> asserted proves that the instrument or an accompanying
> written communication contained a conspicuous statement
> to the effect that the instrument was tendered as full
> satisfaction of the claim.

Cal. Com. Code § 3311.  Based on § 3311, courts have found that an

accord and satisfaction of a claim is reached where: (1) there is

a conspicuous statement indicating that the check is tendered in

---

[6] Neither party asserts that section (c) applies, and an
independent review of the statute suggests that it does not apply.

1  full and final satisfaction of the claim; (2) it is undisputed that
2  a bona fide dispute exists as to the amount owed to the claimant;
3  (3) the check is tendered in good faith; (4) the check is cashed
4  by the claimant.  Woolridge v. J.F.L. Elec., Inc., 96 Cal. App. 4th
5  Supp. 52, 60-61 (2002). The statute is a codification of the common
6  law doctrine of accord and satisfaction, see Cal. Com. Code § 3311,
7  Official Comment 3, and so where the code is ambiguous, courts look
8  to common law for clarification.  See Hull & Sharma, Satisfaction
9  Not Guaranteed: California's Conflicting Law on the Use of Accord
10 and Satisfaction Checks, 33 Loyola L.A. L. Rev. 1, 25 (1999).

11       The question of whether an accord and satisfaction to a claim
12 was reached is a question of fact.  Bii Fin. Co. V. U-States
13 Forwarding Servs. Corp., 95 Cal. App. 4th 111, 126 (2002).  Because
14 the doctrine of accord and satisfaction operates as an affirmative
15 defense, the burden of proof rests on the defendant.  Rabinowitz
16 v. Kandel, 1 Cal. App. 3d 961, 965 (1969).  Therefore, in order to
17 meet its initial burden for summary judgment, defendant must
18 provide admissible evidence so that a reasonable finder of fact
19 would determine that all of the elements of accord and satisfaction
20 are met.  See Aguilar v. Atlantic Richfield Co., 25 Cal. 4th 826,
21 850 (2001).

22       **b.  The Elements**

23       Two of the four elements are easily disposed of.  First, it
24 is clear that there is a bona fide dispute.  A bona fide dispute
25 is an honest dispute between the parties, based on disagreement
26 regarding the validity or fairness of the contract, not based

simply on the "mere pretense" of the debtor attempting to avoid a
payment which he clearly owes. Berger v. Lane, 190 Cal. 443 (1923).
The test is whether the dispute is honest or fraudulent. Potter v.
Pacific Coast Lumber, 37 Cal. 2d 592,597(1952).  In the case at
bar, it is clear that there is an honest disagreement between the
parties as to the amount owed to plaintiff by defendant.  Plaintiff
claims that $15,000 (the amount of the policy) is owed, Compl. ¶
10, while defendant denies owing the full benefit of the policy,
Answer ¶ 10.  Plaintiff has failed to produce any evidence that
establishes that there is any dispute as to this element.

Second, it is undisputed that plaintiff endorsed and cashed
the check on or about August 24, 2004, Def.'s SUF ¶ 33, thus
satisfying the fourth element of accord and satisfaction.  The
remaining two elements require closer examination.

### i.  Conspicuous Statement

In order to satisfy § 3311, the language indicating that the
check is tendered in full and final settlement of the claim must
be conspicuous. See Cal. Com. Code § 3311(b).

The official comments to § 3311 provide that a statement is
conspicuous if "it is so written that a reasonable person against
whom it is to operate ought to have noticed it." Cal. Com. Code §
3311, Official Comment 4.  Per the plain language of the statute,
this statement need not be on the check itself, but may be
contained in an accompanying document.  See Cal. Com. Code §
3311(b), Potter, 37 Cal. 2d at 592.

In addition to being noticeable, the language must have some

24

level of clarity: the plain language of the statute provides that the statement must be "to the effect that" the payment is tendered in final satisfaction of the claim.  Cal. Com. Code § 3311(b).  In order to satisfy this requirement, the statement must be "sufficiently explicit and unequivocal in its terms as to impose the condition that it could be accepted only as payment in full and not otherwise." Dietl v. Heisler, 188 Cal. App. 2d 358, 365 (1961).

Courts have interpreted the following language as being sufficiently conspicuous:  "full and final settlement," Directors Guild of Am. v. Harmony Pictures, Inc., 32 F. Supp. 2d 1184, 1186-1187 (D. Cal. 1998); "in full settlement of account stated below," Potter, 37 Cal. 2d at 598 (ruling based on common law); "intended as full satisfaction of the disputed account," Biaggi v. Sawyer, 75 Cal. App. 2d 105, 114 (Cal. 1951)(ruling based on § 1526); "for full and final settlement of your injury," and "for the total loss of your vehicle," Woolridge, 96 Cal. App. 4th Supp. at 55.

Even where the language is clear, the actions of the parties are to be considered in determining whether the debtor intended an accord and satisfaction.  Berger v. Lane, 190 Cal. 443, 452 (1923). Statements, declarations, and actions "must be of such a character as to express in a clear manner the intention of the parties [to effect an accord and satisfaction]." Id.; See also Creighton v. Gregory, 142 Cal. 34 (1902).

In the case at bar, the letter received by plaintiff stated the following:

1    　　　　The obligation of The Baltimore Life Insurance
2    Company is limited to the refund of all premiums since
     the date of this reinstatement.  A check in the amount
3    of $2,171.80 representing the premiums paid into this
     policy since reinstatement is enclosed.  <u>The depositing</u>
4    or cashing of this check will release The Baltimore Life
     Insurance Company from paying this claim.

5
6    　　　　If you disagree with this determination you may
     submit additional information as well as your comments
7    and views of ths issue in writing to the Baltimore Life
     Insurance Company.  We will then examine pertinent
8    documents and your issues.  Or you may contact the:
     California Department of Insurance.

9    Ex. K, Schuster Decl. (emphasis added).

10

11   　　　　It is undisputed that plaintiff cashed the check.  It is also

12   undisputed that after cashing the check, defendant continued to

13   respond to and investigate plaintiff's claim.  <u>See</u> Ex. S, Schuster

14   Decl.

15   　　　　The wording of the letter, and the actions of defendant do not

16   conclusively establish that there was an offer for accord and

17   satisfaction.   First, the statement in the letter was not

18   sufficiently conspicuous.  Unlike other statements that have been

19   found conspicuous (such as "full and final settlement," Harmony

20   Pictures, Inc.,32 F. Supp. 2d at 1186-1187; "in full settlement of

21   account stated below," Potter, 32 Cal. 2d. at 598; "intended as

22   full satisfaction of the disputed account," <u>Biaqqi</u>, 75 Cal. App.

23   2d at 114; "for full and final settlement of your injury,"

24   <u>Woolridge</u>, 96 Cal. App. 4th Supp. at 55), the letter here simply

25   stated: "The depositing or cashing of this check will release The

26   Baltimore Life Insurance Company from paying this claim."   The

letter then went on to state, that if "you disagree with this determination you may submit additional information as well as your comments and views of ths issue in writing to the Baltimore Life Insurance Company."   Ex. K, Schuster Decl.   In drawing all reasonable inferences in plaintiff's favor, it cannot be said that this statement is sufficiently conspicuous.

Even if the wording was clear, the actions of the parties suggest that the depositing of the check did not, in fact, release defendant.   See Berger, 190 Cal. at 452.   As previously noted, defendant continued to respond to plaintiff's requests and continued to investigate plaintiff's claim.   For example, in November and December of 2004, defendant sent plaintiff a service questionnaire regarding the Ms. Allen's medical conditions, as well as letters requesting return of the questionnaire, see Ex. Q, Schuster Decl.   In February 2005, defendant reevaluated its decision to rescind the policy, see Ex. T, Schuster Decl.

The ambiguous language in the letter, taken together with the actions of defendant, do not establish that defendant offered an accord that was sufficiently conspicuous to satisfy the requirement of § 3311.   Defendant fails to meet its initial burden of setting forth sufficient facts that entitles defendant to judgment as a matter of law.   Because defendant does not meet its initial burden, it is not incumbent on plaintiff to set forth evidence suggesting that there are disputed facts.

**ii.  Check offered in good faith**

In order to constitute a valid accord and satisfaction, the check must be offered in good faith.  Woolridge, 96 Cal. App. 4th Supp. at 60-61.  The official comments to § 3311 define good faith as (1) "honesty in fact" and (2) "observance of reasonable commercial standards of fair dealing."  Cal. Com. Code § 3311 Official Comment 4.  The official comments explain that where the claimant is necessitous and clearly covered by the policy, an offer disproportionately small in comparison to the claimant's injuries and amount of the policy does not meet the good faith requirement. See id.

The case law, however, sheds little additional light on what constitutes a good faith offer.  In Woolridge, for example, the court concluded that a good faith offer existed when the parties had previously agreed on the amount of the offer.  See Wooldridge, 96 Cal. App. 4th Supp. at 60-61.  Here, however, no such agreement was reached by the parties.  Simply stated, it is not clear that the offer of $2,171.80 representing repayment of decedent's premiums was a good faith offer of settlement for the $15,000 policy.

That said, the court need not resolve this question.  As previously noted, defendant's inability to meet its burden with respect to the first element (that there was a conspicuous statement) prevents this court from entering summary judgment in defendant's favor.  For these reasons, defendant's motion for

28

summary judgment based on the affirmative defense of accord and satisfaction is denied.

**B.   Punitive Damages**

Defendant also moves for summary judgment on plaintiff's claim for punitive damages.   For the reasons discussed herein, defendant's motion is granted.

A finding that a defendant violated the duty of good faith and fair dealing does not automatically support an award of punitive damages.   Silberg v. California Life Ins. Co., 113 Cal. Rptr. 711, 719 (1974).   There must be clear and convincing evidence that the defendant is guilty of oppression, fraud or malice.   Cal. Civ. Code § 3294 (a).

"Malice" under Civil Code § 3294 "means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code, § 3294 (c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.... 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code, § 3294(c)(2) & (3).

Defendant argues that even if it acted unreasonably in attempting to rescind the policy, there is no clear and convincing

1  evidence that defendant acted with malice, oppression or fraud.

2  The court agrees.

3      Plaintiff fails to set forth any evidence that disputes

4  defendant's position that even if it did act unreasonably, there

5  is no evidence of malice, oppression or fraud.  In plaintiff's

6  opposition brief, plaintiff merely states that defendant

7  consciously disregarded plaintiff's rights and accordingly should

8  be punished.  While this may be true, plaintiff fails to cite to

9  any admissible evidence in support of her position.  Accordingly,

10  summary judgment must be entered for defendant.

**IV.**

**Conclusion**

11

12

13  1.  Defendant's Motion for Summary Judgment is DENIED in

14      part and GRANTED in part.

15  IT IS SO ORDERED.

16

17  DATED:  June 11, 2007.

18

19  _____
    LAWRENCE K. KARLTON
20  SENIOR JUDGE
    UNITED STATES DISTRICT COURT

21

22

23

24

25

26